UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE S. BUSTAMANTE,  :
:
    Petitioner  :
:
  v.  : CIVIL NO. 3:CV-05-0291
:
FEDERAL BUREAU OF PRISONS, ET AL.,[1]  : (Judge Kosik)
:
    Respondents  :

# **M E M O R A N D U M**

**Introduction**

    George S. Bustamante is a federal inmate currently confined at the United States Penitentiary at Lewisburg (USP-Lewisburg), Pennsylvania. He filed this habeas corpus petition pursuant to 28 U.S.C. § 2241 on February 9, 2005 challenging the Bureau of Prison's ("BOP") current policy regarding the release of inmates to a halfway house or Community Corrections Center ("CCC"). The required filing fee has been paid. In the petition, Bustamante asks the court to grant his request for CCC placement and to order the BOP to approve him for a minimum of six months placement in a CCC.

---

    [1] As respondent correctly points out, the only proper respondent in this action is the person having custody of petitioner, Warden Joseph Smith. See 28 U.S.C. §§ 2242, 2243; Fed. R. Civ. P. 81(a)(2).

On April 14, 2005, service of the petition was directed. (Doc. 4.) Following an extension of time, a response to the petition was filed on May 18, 2005. (Doc. 10.) A traverse was thereafter submitted on June 6, 2005. (Doc. 11.)

Bustamante was convicted of Bank Robbery in violation of 18 U.S.C. § 2113(a) and received a sentence of 210 months imprisonment followed by a three year period of supervised release. (Doc. 9, Ex. A, Baumgartel Decl. at ¶ 4.) He is currently projected to be released on April 3, 2006, via Good Conduct Time Release. His pre-release preparation date is October 3, 2005. (Id.) The BOP is currently in the process of recommending and approving Bustamante for 180 days placement in a CCC. (Id. at ¶¶ 5-6, and pp. 11-13.) Bustamante was seen for a 180-day Program Review on March 28, 2005. This program review recommended that he be given consideration for a maximum six-month placement in a CCC with an anticipated transfer date of October 3, 2005. The long term goal section for his review noted that he "Receive 6 month CCC Placement." (Id. at ¶5, Attach. 2.) His "CCC Packet" is pending completion and approval. According to the BOP, it is anticipated that Bustamante will be transferred to a halfway house on or about October 3, 2005. For the reasons that follow, the instant petition will be dismissed.

**Discussion**

Federal law provides for the placement of an inmate in pre-release custody near the end of his sentence to allow prisoners an opportunity to adjust to the community prior to their release. 18 U.S.C. § 3624(c) provides that to the extent practicable, such placement will take place during the last ten percent of a prisoner's sentence, not to exceed 6 months:

2

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

The customary practice of the BOP was to consider prisoners for placement in CCCs for as much as the last six months of their sentences, even if this occurred before the prisoner had served 10% of his sentence ("Six Month Rule"). However, that practice ended on December 20, 2002, following a Memorandum Opinion issued by the Office of Legal Counsel of the United States Department of Justice ("OLC Memorandum"), which concluded that the Six Month Rule was improper under the plain language of § 3624(c). The OLC Memorandum stated that "[t]he authority conferred under Section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period 'not to exceed six months, of the last 10 per centum of the time to be served,' 18 U.S.C. § 1324, and we see no basis for disregarding this time limitation." (Doc. 9, Ex. B.)

This abrupt change in the BOP practice of designating inmates to CCCs resulted in a flurry of litigation throughout the federal courts because inmates were not transferred to a CCC for any longer than a reasonable portion of the last ten percent of the inmates' sentences, not to exceed six months. A number of courts, including this one, rejected the application of the 10% Rule and ordered the BOP to reassess inmates' CCC referrals according to the pre-December 2002 policy. See Serafini v. Dodrill, 3:CV-04-0311, slip op. (M.D. Pa. Feb. 23, 2004)(Vanaskie, C.J.); Fagiolo v. Smith, 3:CV-04-0148, slip op. (M.D. Pa. Mar. 12,

2004)(Conaboy, J.);Livingston v. Dodrill, 3:CV-04-0150, slip op. (M.D. Pa. Mar. 18, 2004); Calascione v. Dodrill, 3:CV-04-0201, slip op. (M.D. Pa. May 3, 2004)(Nealon, J.).[2] Some courts held the BOP violated the Administrative Procedures Act ("APA") when it initiated the December 2002 policy change since no public review and comment period had been allowed.

    The BOP responded with proposed new regulations in August of 2004 which, at least in part, attempted to deal with the judicial critiques of its application of the OLC Memorandum. The proposed rules stated that the BOP was exercising its discretion by limiting CCC placement to the last ten percent of an inmate's sentence, not to exceed six months and was published in the Federal Register for public comment.  Subsequently, in January 2005, notice of the final rule was published and went into effect February 14, 2005.  See Community Confinement, 69 Fed. Reg. 51, 213 (Aug. 18, 2004) and 70 Fed. Reg. 1659 (Jan. 10, 2005). (Id., Exs. D, E.)

    The new rule amended 28 C.F.R. § 570 regarding the maximum halfway house time an inmate may receive.  In particular, 28 C.F.R. § 570.21 now provides:

> (a)    The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b)    We may exceed these time-frames only when specific Bureau programs allow greater periods of community

---

[2] On March 17, 2005, the Third Circuit Court of Appeals issued an unreported decision acknowledging that the Third Circuit had yet to address this issue and finding no need to do so in their decision at that time.  See Mendez v. Apker, slip op. No. 04-4719 (3d Cir., March 17, 2005).

4

>confinement, as provided by separate statutory authority
>(for example, residential substance abuse treatment
>program (18 U.S.C. § 3621(e)(s)(A)), or shock incarceration
>program (18 U.S.C. § 4046(c)).

In the instant case, the court agrees with respondents that the instant petition is subject to dismissal as no case or controversy currently exists in the pending matter. Bustamante seeks to have the court order the BOP to approve him for a minimum six-month placement in a CCC. In following the precedent established by this court in rejecting the validity of the OLC Memo, the remedy would be to direct the BOP to consider inmates for CCC placement in accordance with factors taken into account by the BOP prior to December 2002. However, in the instant case, Bustamante fails to demonstrate, or for that matter even allege, that the BOP will not be placing him in a CCC for six months. In fact, every indication in the record establishes that he has been considered for the six month placement and is waiting to be approved at this time. According to the declaration submitted by respondents, the BOP is currently in the process of approving Bustamante for the 180 day placement and no final decision to the contrary has been made. As such, no case or controversy presently exists in this case.[3] It is only after Bustamante's transfer date has been finalized/ he has been denied the desired CCC placement time and exhausted his available administrative remedies that this matter becomes ripe for review by the court. However, even assuming Bustamante is entitled to consideration for CCC placement under the BOP's prior policy, the record indicates that

---

[3] "Article III requires that an actual controversy exist through all stages of litigation." United States v. Kissinger, 309 F.3d 179, 180 93d Cir. 2002).

Bustamante will be afforded all the relief to which he would be entitled in this action - - the six months CCC placement.

To the extent Bustamante challenges the BOP's revised interpretation of its halfway house placement policy as violating the public notice and comment requirements of the APA, the court rejects his argument.  While notice and comment is required when an agency promulgates substantive rules or regulations, it is not required for interpretive rules, general statements of policy, or rules of agency procedure or practice.  See 5 U.S.C. § 553(b)(3)(A); see also Dismas Charities v. U.S. Department of Justice, 401 F.3d 666, 679-80 (Mar. 11, 2005)(finding that the BOP's December 2002 policy change did not violate the APA since it was an example of an interpretive rule.)

Based on the foregoing, the petition will be dismissed.  An appropriate Order is attached.

6

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE S. BUSTAMANTE, :
:
    Petitioner :
:
v. : CIVIL NO. 3:CV-05-0291
:
FEDERAL BUREAU OF PRISONS, ET AL., : (Judge Kosik)
:
    Respondents :

**O R D E R**

**NOW, THIS 29th DAY OF AUGUST, 2005,** in accordance with the attached Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

    1. The petition for writ of habeas corpus is dismissed.

    2. Petitioner's motion requesting the court to issue an order on the writ of habeas corpus (Doc. 10) is denied as moot.

    3. The Clerk of Court is directed to close this case.

                                                        s/Edwin M. Kosik
                                                      United States District Judge